UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COLLEEN R. HANLEY

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

MORGAN STANLEY

_____

_____

*(In the space above enter the full name(s) of the defendant(s).
If you cannot fit the names of all of the defendants in the space
provided, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of names.
Typically, the company or organization named in your charge
to the Equal Employment Opportunity Commission should be
named as a defendant.  Addresses should not be included here.)*

14CV4839

2

## COMPLAINT
## FOR EMPLOYMENT
## DISCRIMINATION

Jury Trial:  ☑ Yes   ☐ No
*(check one)*

RECEIVED
JUN 18 2014
PRO SE OFFICE

This action is brought for discrimination in employment pursuant to: *(check only those that apply)*

✓        Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e
to 2000e-17 (race, color, gender, religion, national origin).
***NOTE:*** *In order to bring suit in federal district court under Title VII, you must first obtain a
Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

_____        Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§
621 - 634.
***NOTE:*** *In order to bring suit in federal district court under the Age Discrimination in
Employment Act, you must first file a charge with the Equal Employment Opportunity
Commission.*

✓        Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 -
12117.
***NOTE:*** *In order to bring suit in federal district court under the Americans with Disabilities Act,
you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity
Commission.*

_____        New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297  (age,
race, creed, color, national origin, sexual orientation, military status, sex,
disability, predisposing genetic chacteristics, marital status).

_____        New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to
131 (actual or perceived age, race, creed, color, national origin, gender,
disability, marital status, partnership status, sexual orientation, alienage,
citizenship status).

## I.     Parties in this complaint:

A.     List your name, address and telephone number.  Do the same for any additional plaintiffs named.  Attach additional sheets of paper as necessary.

Plaintiff      Name _COLLEEN R. HANSLEY_
                Street Address _3915 Orloff Ave. / # 5H_
                County, City _Bronx   NY_
                State & Zip Code _NY   10463_
                Telephone Number _917 684 0215_

B.     List all defendants' names and the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

Defendant     Name _MORGAN STANLEY_
                Street Address _1221 Avenue of the Americas_
                County, City _New York_
                State & Zip Code _New York_
                Telephone Number _212.762.5161_

C.     The address at which I sought employment or was employed by the defendant(s) is:

                Employer _____
                Street Address _____
                County, City _____
                State & Zip Code _____
                Telephone Number _____

## II.    Statement of Claim:

State as briefly as possible the <u>facts</u> of your case, including relevant dates and events.  Describe how you were discriminated against.  If you are pursuing claims under other federal or state statutes, you should include facts to support those claims.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.  The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

        _____          Failure to hire me.

        ____✓_____          Termination of my employment.

        ____✓_____          Failure to promote me.

        ____✓_____          Failure to accommodate my disability.

        ____✓_____          Unequal terms and conditions of my employment.

✓ Retaliation.

✓ Other acts *(specify):* *Cause of Post Traumatic Stress Disorder*

*Note:* *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

B.   It is my best recollection that the alleged discriminatory acts occurred on: _____.

                                                                                                    *Date(s)*

C.   I believe that defendant(s) *(check one):*

         _____         is still committing these acts against me.

         ✓               is not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check only those that apply and explain):*

         ☐  race _____              ☐  color _____

         ☑  gender/sex _____                ☐  religion_____

         ☐  national origin _____

         ☐  age.  My date of birth is _____ *(Give your date of birth only if you are asserting a claim of age discrimination.)*

         ☑  disability or perceived disability, *Post Traumatic Stress Disorder* *(specify)*
             *related to sexual assault on Morgan Stanley Premises*

E.   The facts of my case are as follow *(attach additional sheets as necessary):*

         *See attached*

*Note:*   *As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.*

## III.   **Exhaustion of Federal Administrative Remedies:**

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on: *March 4, 2014* _____ *(Date)*.

*Rev. 05/2010*                                    3

COLLEEN R. HANLEY V. MORGAN STANLEY
CASE NO._____
PLAINTIFF DEMANDS TRIAL BY JURY
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*FACTS*

SECTION E. - BACKGROUND

I began working as an Executive Assistant for Morgan Stanley on April 12, 1999.

On July 2, 2002, I was sexually harassed and assaulted by Steven Ruegnitz, Managing Director and Global Head of Information Security, on Morgan Stanley premises located at 750 7th Avenue New York, NY.

I reported the incident to Human Resources Director Erick Kayne on July 2, 2002 (attached email). He did not respond to my email so I escalated the matter to Global Director of Human Resources Jeff Brodsky (attached email).

I was subsequently interviewed by Erick Kayne with my Acting Interim Manager, Aaron Gull, present. Aaron relayed his concerns to Erick Kayne and stated Steven Ruegnitz had a lengthy history of lewd and lascivious behavior towards women in the workplace that he witnessed with his own eyes. Eric Kayne assured both of us he would conduct a thorough investigation. I was dissuaded from filing a police report and was told the matter would be effectively handled by Morgan Stanley personnel.

On July 11, 2002 I was summoned back to Human Resources to meet with Eric Kayne and Marc Greenfield to discuss the of incident sexual harassment and assault on July 2, 2002. Both Eric Kayne and Marc Greenfield – an attorney for Morgan Stanley – stated Steven Ruegnitz categorically denied any wrong doing and there was "nothing the Firm could do". I was shocked. I asked if anyone reviewed video surveillance from the 9th floor, the elevator and lobby or 750 7th Avenue and the entrance area of said building. Both Erick Kayne and Marc Greenfield stated they felt interviewing Steven Ruegnitz was sufficient. After departing Human Resources I suffered an emotional breakdown. The following day I asked Eric Kanye to clarify Marc Greenfields position at Morgan Stanley. When I was advised that he was Corporate Counsel, I notified Eric Kanye that I would not return to the office and I would be working remotely until Morgan Stanley "Counsel" and Security conducted a thorough investigation. And that there was no doubt in my mind that once a proper investigation was completed, Steven Ruegnitz would have zero credibility. I also reminded Eric Kayne that Steven Ruegnitz position as Global Head of Information Security required the highest levels of integrity and self-control. I also asked Eric Kayne to interview other female employees of Morgan Stanley who informed me that they, too, had been sexually harassed and assaulted by Steven Ruegnitz. Two such women were Tracie Slack and Kristine Rommel. Both women were subsequently interviewed by Eric Kayne.

Prior to my departure from work, I was advised by my Manager, Joseph Rooney, that myself and my three young children would "suffer unnecessarily" if I filed a police report and applied for Workers Compensation while I was out of the office. I was also advised by Joseph Rooney that I would be "blackballed" from any work on Wall Street if I went outside of the Firm with my complaints. At the time of the sexual assault my children were ages 2, 6 and 10. I did not want to subject them to the horrors of Public Assistance and uncertainty. I had to keep my job to provide for my family as a single parent.

1

COLLEEN R. HANLEY V. MORGAN STANLEY
CASE NO._____
PLAINTIFF DEMANDS TRIAL BY JURY
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Eric Kanye contacted me and informed me that after watching video surveillance and conducting interviews with other female employees as well as considering testimony from Aarron Gull, the Firm did conclude that Steven Ruegnitz behaved inappropriately and wanted to "apologize" for his behavior. I refused to accept any apologies and notified Eric Kayne that the Firm should actually terminate the employment of Steven Ruegnitz for denying the incident and stating I was "a liar" and for his horrifying behavior towards me on the 9th floor, the elevator, the lobby and outside of 750 7th Avenue, New York, NY.

Eric Kayne stated the Firm would take my concerns into consideration. I was ordered to return to work on August 7, 2002. Given the fact that I had no other source of income to provide for my young children, I reluctantly returned to the workplace. Thereafter, I was repeatedly subjected to retaliatory measures from various employees of Morgan Stanley.

Steve Ruegnitz was not terminated. He was permitted to keep his position in the Firm. Kristine Rommel accepted his apology and she was promoted to an exempt position, received a large salary increase and was allowed to work from home every day without restrictions.

On several occasions I was subjected to inappropriate conduct and demands outside of the scope of my role as Executive Assistant. After breaking my arm and back in January of 2003, I was placed on Short Term Disability leave. Upon my return from Short Term Disability Leave, I was subjected to behaviors best described as a violation of my Human Rights. Male employees would stand next to my desk and use profanity, commenting about the bodies of women in the office and on one occasion a Vice President named Ed Troya stood next to my cubicle and repeatedly screamed "it smells like ass over here! It smells like ass!!!" I reported the incident to Human Resources on March 5, 2003. I was assured that Human Resources and Ed Troya's Manager, William Hollister, who was also one of my Managers at the time, and I was assured the issue would be addressed. This was followed by William Hollister filing a complaint about the sum total of my absences from the office. I was summoned to Human Resources on March 18, 2003 to discuss the matter with Joseph Rooney, Philip Rothenstein, HR Director Juli Blanche and William Hollister. I was asked to modify my Physical Therapy sessions and all parties were informed that I was only required to perform administrative functions for my Managers. In addition, I was asked to find back-up childcare for nights that I would be asked to work overtime.

Although I was assured during the meeting with Human Resources that the harassment would cease and I would no longer be expected to accept working in a hostile work environment, the abusive language and unrealistic expectations set by William Hollister made it difficult to perform my job without feeling a sense of worthlessness and hopelessness.

In August 2004 I approached my Manager, Joseph Rooney, and asked if I would be able to take advantage of the Firm's Tuition Reimbursement Program and return to school Full-Time while working Part-Time on site at 750 7th Avenue and work remotely from home on the days I was enrolled in class. Joseph Rooney told me it would not be in his best interests to allow me to work from home and unless I was able to cite a precedent of employees who were able to collect a salary from Morgan Stanley on a part-time in office basis to other personal obligations, my request was unreasonable and he would not

COLLEEN R. HANLEY V. MORGAN STANLEY
CASE NO._____
PLAINTIFF DEMANDS TRIAL BY JURY
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

accommodate or approve my return to school.

On August 13, 2003, I sent Joseph Rooney an email explaining that I recently had a conversation with Kristine Rommel during such time she informed me that she would be assigned to Ft. Hamilton in Brooklyn to attend to her position in the United States Coast Guard Reserves and that she would be collecting her full salary at Morgan Stanley and her salary as a member of the United States Coast Guard Reserves. Richard Anfang, who encouraged Kristine Rommel to accept the apology of Steve Ruegnitz, made arrangements that would allow Kristine Rommel to collect two salaries while she was out of the office for a period of two years while attending to Coast Guard duties. I respectfully requested Joseph Rooney reconsider my request in light of the discovery that Kristine Rommel would be permitted to collect her full Morgan Stanley salary while serving in the Coast Guard Reserves full time for a period of two years. Joseph Rooney refused to approve my request for a part-time in office/part time work from home arrangement while I attended class.

For a period of four years, I continued to be subject to a multitude of offenses and disproportionate consideration as it related to my position as an Executive Assistant. I made several attempts to seek promotional opportunities to no avail. In 2008 Steven Ruegnitz finally left the Firm to form his own pornographic photography Corporation while working as a consultant at JPM Chase. Once again I approached my Manager Joseph Rooney to inquire about working from home while I attended classes full time. Joseph Rooney worked out an agreement where I would work from home Mondays Wednesdays and Fridays. I was provided with a laptop and blackberry which would allow me to tend to Morgan Stanley business from any remote location.

In September 2011, as I neared the completion of my undergraduate studies I began to search for positions on the internal job bank that were a good fit for my experience with the Morgan Stanley, my studies in Philosophy Law and Public Policy as well as my experience as a member of NYC Government serving as a Board Member on various committees at Community Board 8 in the Bronx. I applied for no less than five (5) positions and emailed various HR representatives listed for each position on the Job Bank. Although I attempted to contact the HR reps through email and several phone calls, I never received any return phone calls or emails. I began to grow suspicious and worried. I decided to search the Corporate Directory to discover if Steve Ruegnitz returned to the Firm in a capacity that would allow him to influence various Human Resource employees as a means to deny me any advancement in my career at Morgan Stanley or deny me any promotional opportunities. It was during this search I discovered the daughter of Steven Ruegnitz – Jennifer Ruegnitz – was employed by Morgan Stanley as a Senior Staffing Analyst and she reported directly to Sylvia Ponce, a former subordinate of Steven Ruegnitz while he served as the Global Head of Information Security at Morgan Stanley.

This discovery compelled me to have a breakdown. I reported my findings to Human Resources Executive Director Seana Scott on December 9, 2011. Though I expressed my panic and horror to Seana Scott, several meetings were cancelled as Seana Scott requested that I meet with her in midtown to discuss the circumstances which I was unable to do because I was pregnant and considered hi-risk for miscarriage. Seana Scott was unable to meet with me at 1 New York Plaza.

3

COLLEEN R. HANLEY V. MORGAN STANLEY
CASE NO._____
PLAINTIFF DEMANDS TRIAL BY JURY
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

I met with Joseph Rooney who said I should continue to discuss my issues with my then current manager, Jeanette Gamble, because Joseph Rooney was in the process of resigning from Morgan Stanley and accepted an offer at JPM Chase. Upon discussing the matter with Jeanette Gamble in person on February 28, 2012 I was told I should be fearful of Seana Scott. Jeanette Gamble told me to work with her for the duration until she was able to find me another opportunity. I expressed my concerns over Steven Ruegnitz access to my personal information and his influence over his daughter Jennifer Ruegnitz as she served in her capacity as Senior Staffing Analyst for Morgan Stanley Human Resources. Approximately 15 minutes after leaving the office of Jeanette Gamble I was summoned back to her office. According to Jeanette Gamble, Seana Scott coincidentally called her upon my departure and proceeded to question my work from home arrangement, my flex time agreement, my coursework at University and my Time Sheets.

Several emails were exchanged in which I detailed the manner in which I felt I was being subject to more instances of retaliation and completely ignored when I inquired about promotional opportunities. Upon meeting with Seana Scott and Karen Richter in Midtown NYC on or about March 15, 2012 I was informed Jennifer Ruegnitz no longer worked for Morgan Stanley. Jennifer Ruegnitz accepted an offer from Bridgewter Associates in Stamford, CT. Her father, Steven Ruegnitz was a Managing Director at Bridgewater Associates and assisted her in finding a position. Upon receiving this information I suffered an emotional breakdown. I was assured my complaints did not cause Morgan Stanley to terminate the employment of Jennifer Ruegnitz. Karen Richter arranged for me to meet with one of her recruiters to discuss open positions at Morgan Stanley.

On March 19, 2012 I received several urgent messages on my Blackberry from staff in Asia who were unable to locate Jeanette Gamble. On March 20, 2012 I sent an email to Jeanette Gamble as a means to establish a definitely policy on claiming overtime. I was tethered to both my laptop and blackberry, often answering calls and messages in the middle of the night and during the weekends. I received no answer. On March 22, 2012 I sent an email to the EEOC to describe my experience as I firmly believed I was being discriminated against and the retaliatory measures I was experiencing were in direct relation to my raising issue with Morgan Stanley hiring the daughter of a former employee who sexually assaulted me in a position that would enable her to have influence over her peers and block any efforts I made to have the same promotional opportunities as my peers. I received no response from the EEOC.

On April 26, 2012, I was ordered to execute (sign) and post in a conspicuous area a Labor Condition Agreement (LCA) that described the salary and position of a new Morgan Stanley hire pursuant to Federal Labor Law. After hanging the LCA, I was subjected to a series of abusive comments and statements made by offers of the Firm who objected to my posting and LCA as required by Law. On April 28, 2012 Jeanette Gamble called me in a State of Panic on a Saturday morning after she misplaced her itinerary and could not order herself to promptly board a flight for a business trip. I went home, logged into my computer and assisted Jeanette Gamble remotely in spite of the fact that I was supposed to be attending a personal event for my own daughter. I booked six hours on my time sheet while I assisted Jeanette Gamble on a Saturday afternoon. Jeanette Gamble immediately questioned the accuracy of my timesheet despite the fact that she pulled me away from family obligations on a Saturday afternoon.

4

COLLEEN R. HANLEY V. MORGAN STANLEY
CASE NO._____
PLAINTIFF DEMANDS TRIAL BY JURY
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Upon her return from a business trip I was ordered to process an expense report for Jeanette Gamble for expenses that did not conform with Morgan Stanley expense policy. I reviewed all of her previous expenses and realized Jeanette Gamble was an employee for Morgan Stanley and a monetarily compensated "Board Member" for Teradata Corporation. I sent all evidence of malfeasance to Compliance and alerted the proper parties that several other breaches of Firm policy were transpiring around me on a daily basis. Whereas I as already uncomfortable knowing I was discriminated against and suffered daily encounters with retaliatory measures, I attempted to address my concerns with the direct manager of Jeanette Gamble, Keith Cheng.


A series of emails followed. A meeting with Karen Richter of Human Resources was scheduled for July 31, 2012. I prepared an agenda and was under the impression that I would be meeting with Karen Richter as a means to express the many difficulties I was having mentally and emotionally after discovering the daughter of my perpetrator was employed by Morgan Stanley and the individual may have accessed my personal information. Karen Richter invited Managing Director Michael Poser to the meeting without informing me that another employee would be present. I was emotionally overwhelmed when I discussed the initial sexual assault, the retaliatory measures I experienced, the hostile work environment I endured, the many instances where my integrity was questioned, the miscarriage I suffered in January 2012 that inevitably resulted from the mental pain and anguish I experienced and a plethora of incidents to substantiate my claims.

On August 3, 2012 I was placed on Short Term Disability by my endocrinologist and Psychologist.

I received 12 weeks of Family Medical Leave and an additional 12 weeks of Short Term Disability Leave for the period of August 6 ,2012 through February 4, 2013. METLIFE refused to approve Long Term Disability after citing that I was not considered "disabled according to the Summary Plan Description between METLIFE and Morgan Stanley". Pursuant to a letter I received from Karen Richter on or about February 13, 2013, I was being placed on an "unpaid" leave of absence" while I submit an appeal to METLIFE to dispute their claims that I was not entitled to Long Term Disability benefits as my Long Term Disability Benefits were governed by Morgan Stanley's Summary Plan Description. This caused a financial catastrophe for myself and my children.

On March 9, 2013 my Psychologist Dr. Denise Granda Gilbert submit a Health Care Provider Assessment Form to Karen Richter in which she requested I be provided a fulltime work from home arrangement for the duration of my treatment. Dr. Granda-Gilbert went to great lengths to explain the psychological devastation caused by the initial sexual assault in July 2002 and injuries compounded by my discovery that my assailants daughter was working at Morgan Stanley in a capacity that would allow her to view my personal information and influence her peers.

Karen Richter refused to provide a Reasonable Accommodation that would allow me to work from home remotely until I felt psychologically fit to return to an environment that irreparably damaged my peace of mind and confidence. I engaged in an Interactive Process as a means to assist Karen Richter to understand the full scope of my disability and the many precedents of employees who worked from

5

COLLEEN R. HANLEY V. MORGAN STANLEY
CASE NO._____
PLAINTIFF DEMANDS TRIAL BY JURY
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

home full time as well as many current employees who worked from home without disabilities and were afforded the opportunity to work remotely as a matter of convenience.  Karen Richter fictitiously stated a full time work from home arrangement for me would cause Morgan Stanley "undue hardship"

The Interactive Process devolved as Karen Richter refused to provide me with a Reasonable Accommodation commensurate with the injuries I sustained literally at the hands of Morgan Stanley employees while working on Morgan Stanley premises.  Despite many attempts to retain my position despite my disability, I was terminate by Karen Richter on May 14, 2013.

On December 17, 2013 U.S. Administrative Law Judge Michael Friedman ruled that my disability was directly related to the initial sexual assault on Morgan Stanley premises and subsequent hostile work environment I was subject to while employed as an Executive Assistant from July 2, 2002 – August 2, 2012.

I was an employee of Morgan Stanley for 14 years.  I worked hard to support my family and endured years of abusive treatment to ensure my children were properly fed, clothed, educated and provided for.  The manner in which I was discriminated against and terminated for Morgan Stanley's refusal to provide me with a Reasonable Accommodation for injuries I sustained on Morgan Stanley premises are reprehensible and clear violations of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§2000e to 2000e-17 because as a woman I was given less consideration and fewer opportunities for advancement in my career than the employee – and his daughter - who sexually assaulted me and the Americans with Disabilities Act of 1990, as codified, 42 U.S.C § § 12112-12117 because my employer refused to provide me with a Reasonable Accommodation as a means to retaliate against me for reporting the initial sexual assault and blatantly nepotistic hiring practices.

I am seeking $25,000,000.00 in actual damages and $30,000,000.00 for the mental pain and anguish my entire family has suffered due to my disability and loss of employment.

Respectfully Submitted,

_____

B.    The Equal Employment Opportunity Commission *(check one)*:

———————  has not issued a Notice of Right to Sue letter.

✓  issued a Notice of Right to Sue letter, which I received on 3/2/14 *(Date)*.

*Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.    Only litigants alleging age discrimination must answer this Question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

———————  60 days or more have elapsed.

———————  less than 60 days have elapsed.

## IV.    Relief:

WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows: _____

$25,000,000.00 actual damages, 30,000,000.00 punitive all costs and fees

*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)*

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 18 day of June , 2014.

Signature of Plaintiff   Collen R Harley

Address   3915 Orloff Ave
#5H
Bronx, NY 10463

Telephone Number   917 684 0215

Fax Number *(if you have one)* _____

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Colleen R. Hanley**<br>**3915 Orloff Ave Apt. 5-H**<br>**Bronx, NY 10463** | From: **New York District Office**<br>**33 Whitehall Street, 5th Floor**<br>**New York, NY 10004** |

| | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2014-01413** | **John B. Douglass, Investigator** | **(212) 336-3765** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

**Kevin J. Berry,**
**District Director**

3-19-2014
*(Date Mailed)*

cc: **Director, Human Resources**
**MORGAN STANLEY**
**1 New York Plaza**
**New York, NY 10004**



EEOC Charge No. 520-2014-01413
Hanley v. Morgan Stanley

Statement of Charging Party

My name is Colleen Hanley. I believe that I was discriminated against by my former employer, Morgan Stanley (hereinafter referred to as Respondent).

I became disabled stemming from an incident in 2002 when I was sexually assaulted by a manager employed by Respondent, and then dissuaded from filing an external complaint about it. My complaint was never properly addressed.

In 2011, I learned that the daughter of my assailant was employed in the Human Resources Department of Respondent. I informed my manager Jeanette Gamble, and Human Resources personnel about my concerns about this, and also my concerns about not being considered for promotional positions within the company.

Subsequent to these meetings, I believe I was retaliated against by having my days working at home questioned, and overtime issues questioned.

In July 2012. I relayed concerns to Respondent's compliance department regarding inappropriate expense vouchers and other issues. This resulted in another meeting with Human Resources in which a Managing Director was asked to attend without my knowledge.

The actions of Respondent resulted in my having to leave work on Short Term Disability from August 2012 until February 2013. I attempted to negotiate a reasonable accommodation with Respondent, consisting of expanded telework, which was supported by medical documentation. Respondent refused my request, and ultimately terminated me in May of 2013.

I believe that Respondent's actions from 2002 to the present in not addressing my sexual harassment complaint, causing my disability, retaliating against me for my complaints, and ultimately refusing to accommodate my disability and firing me, violate Title VII of the Civil Rights Act of 1964, as amended, Title I of the Americans with Disabilities Act of 1990, as amended, and all other applicable st and local statutes.

I affirm that the above statement is true to the best of my knowledge, information and belief.

_____
Charging Party Signature

_____
March 4, 2014
Date

Subscribed and sworn to before me on this date:
(month, day, year)   3/4/2014

_____

EMILY HAIMOWITZ
Notary Public, State of New York
No. 01HA6259020
Qualified in Queens County
Commission Expires April 02, 2016